LOWER v. C., B. & Q. R. COMPANY ET AL.
GRAY v. THE SAME.
ELDER ET AL. v. THE SAME.

1. **Railroads:** SURMOUNTING LEGAL IMPEDIMENTS THROUGH AUXILIARY COMPANY: NO FRAUD. Though a railroad company may not for some reason have the legal authority to condemn right of way for a lateral line, it may cause another company of its own stockholders to be so organized as to have that power, and when such subsidiary company has condemned the right of way, it may lease its line to the former company, and in this there will be no fraud upon those whose lands have been condemned.

2.————: CONDEMNATION OF RIGHT OF WAY FOR: DESCRIPTIONS IN NOTICES. Where notices of condemnation described the land to be condemned as a certain number of feet on each side of the center line of the railroad, "as the same is located, staked and marked," *held,* that this description was sufficient, and if any other parts of the description in this case differed therefrom, they must yield thereto.

3. ————: EMINENT DOMAIN: LATERAL LINES: STATUTE CONSTRUED.
When a company has the power to build an additional lateral road, that
is, a lateral road whose construction and maintenance are possible only
upon an independent right of way, the right of way statute does not
prevent the condemnation of land for such additional road.

*Appeal from Monroe Circuit Court.*

FRIDAY, OCTOBER 20.

THESE cases are submitted together as arising for the most
part out of substantially the same state of facts. The last
two, however, differ from the first in one respect which will
be noticed in the opinion. The plaintiffs respectively seek
injunctions to restrain the defendants, the Chicago, Bur-
lington & Quincy, R. R. Co., and the Chillicothe & Chariton
R. R. Co., from condemning for right of way certain land of
which they are respectively the owners. They aver in sub-
stance in their petition that in 1867, the Burlington & Mis-
souri River R. R. Co. located its road through the lands in
question and condemned for right of way so much of the
lands as lies within fifty feet of the center of their track; that
the company constructed its road, and afterwards the defend-
ant, the C., B. & Q. R. R. Co., not organized under the laws
of Iowa, succeeded to all its property; that in 1878 the C., B.
& Q. R. R. Co. determined to build a lateral track as a part
of their railroad, running on a different line, beginning near
where their railroad crosses the east line of Monroe county,
running thence west in the same general direction, first on the
north side of their railroad, and then on the south side, to a
point about three and one-half miles west of Albia, the lateral
line being about fifteen miles in length; that the company
acquired by purchase a conveyance of a right of way
from nearly all the land owners, but the plaintiffs refused to
convey to the company a right of way through their lands,
being the lands in question; that thereupon certain per-
sons, who were stockholders in the company, associated
themselves together and became incorporated under the name

of the Chillicothe & Chariton R. R. Co., for the ostensible purpose, as shown by their articles of incorporation, of "building a line of railroad from a point on the main line of the railroad owned and operated by the C., B. & Q. R. R. Co., near the east line of Monroe county, thence in a general westerly direction to a point on the main line of said railroad known as Central Crossing, thence in a general westerly direction to a point on the main line of said railroad about three and one-half miles west of Albia, upon such route as the company may hereafter determine;" that the real object of the company was to fraudulently assist the C., B. & Q. R. R., Co. in procuring a right of way for the lateral line which the latter company desired to build as above set forth; that the Chillicothe & Chariton R. R. Co., in pursuance of their fraudulent purpose, instituted proceedings for condemning right of way through their lands respectively; that unless prevented by an injunction the defendants will procure the condemnation of the right of way and complete and operate their lateral line of road. In an amended petition the plaintiffs averred that the Chillicothe & Chariton R. R. Co. had not marked out or determined upon any precise location of their line, nor taken steps to construct a road; that the company pretended to have chosen the line already marked out by the C., B. & Q. R. R. Co., but such choice was not for itself, but was a false and fraudulent pretense, it being understood between the two companies that the road was solely for the C., B. & Q. R. R. Co.; that since the commencement of the action, condemnation proceedings have been had, and the C., B. & Q. R. R. Co. has entered upon the land in question and partially constructed its road.

The defendants for answer admit that the C., B. & Q. R. R. Co., resolved to construct an additional line of road on the route described in the plaintiffs' petition, but deny all fraud, and aver that the proceedings for condemnation prosecuted by the Chilicothe & Chariton R. R. Co. have been regular and legal in every respect. The court upon hearing dismissed the plaintiffs' petition and they appeal.

*James Coen* and *D. Anderson*, for appellants.

*Perry & Townsend*, for appellees.

ADAMS, J.—The evidence shows that the Chillicothe & Chariton R. R. Co. has leased the road in question to the C., B.

**1. RAILROADS: surmounting legal impediments through auxiliary company: no fraud.** & Q. R. R. Co., and we think that the evidence shows that the former company was organized with the design of procuring a right of way and building a road to be used by the latter company. It does not, however, follow that the plaintiffs have been defrauded. The land taken has been taken for public use, and just compensation, as we must assume, has been made to the plaintiffs. Their real ground for complaint, so far as their alleged equity is concerned, is that they have not been allowed to hold the key to the situation in such a way as to enable them to defeat the construction of the road, or obtain more than just compensation. The amount demanded by the plaintiffs was such as to show very clearly that it was graduated without any reference to the real damages sustained, but the supposed exigency of the company. Now, while it some times happens that a person can under the protection of the law practice extortion, it is proper for an intended victim to resort to every legal device to defeat the attempted extortion, and, if he succeeds, his action cannot properly be called fraudulent. The plaintiffs, indeed, do not themselves seem to place much reliance upon the alleged ground of fraud. This appears from the emphasis which they place upon the necessity of construing strictly the powers of a corporation. If we could see that the plaintiffs have been defrauded by the defendants, our way would be very clear. The fact of fraud would entitle the plaintiffs to relief, and it would be of very little consequence what the defendant's powers are. Now we apprehend that the real question in this case is not a question of fraud but of power. The plaintiffs we think have no right to relief unless they can maintain the correctness of the fol-

lowing proposition: The C., B. & Q. R. R. Co. has no power to condemn the land in question; this being so, no other company can be organized with power to condemn it, whose sole object is to aid the C., B. & Q. R. R. Co.

A corporation has all the power expressed in its articles of incorporation or charter, and all other power reasonably incident to the exercise of the expressed powers, unless restricted by some statute or rule of law. The evidence does not show the articles of incorporation or charter of the C. B. & Q. R. R. Co., but if it is a foreign corporation as averred, it could not, prior to the act of March, 1878 (Sec. 1241 Miller's Code,) condemn land for right of way in this State, whatever its articles of incorporation or charter might provide. The lateral line in question appears to have been partially constructed in the summer and fall of 1878. The Chillicothe & Chariton R. R. Co. was organized in November, 1878. Whether the act in question had been overlooked or whether it was supposed that with that act the C., B. & Q. R. R. Co. had no power to condemn the land in question, or what view was taken, does not appear. The defendants insist that it is not material to consider what power the C., B. & Q. R. R. Co. had, so far as its articles of incorporation or charter was concerned; that if it.should be conceded that it lacked the power in question, the deficiency might be supplied by an amendment of its articles of incorporation or charter, and, if so, that the organization of a new company under the laws of Iowa should be deemed equivalent to such amendment, at least so far as the plaintiffs are concerned. They say that the plaintiffs have not only been justly compensated, but that there has been a compliance with the forms of law, and so the plaintiffs have no ground of any kind upon which they can stand in a court of equity.

To this position the plaintiffs make several objections. They deny that there has been a compliance even with the forms of law. They say, among other things that the Chillicothe & Chariton R. R. Co. never surveyed any line of road,

and at most merely adopted the line surveyed by the C., B. & Q. R. R. Co. But in our opinion the adoption of another company's survey was equivalent to making a survey for itself.

In two of the cases the plaintiffs filed supplemental petitions, averring that the land condemned did not wholly correspond with the land described in the notices of condemnation. But taking the notices as a whole, we think that they were sufficient for the purpose for which they were designed. The land is described as a certain number of feet on each side of the center line of the railroad "as the same is located, staked and marked." This, we think, must be deemed the controlling part of the description, and if any other parts differ therefrom, they must be held to yield thereto. The center line of the land condemned corresponds with the center line of the road as it was located, staked and marked." The irregularity, if any, is not such, we think, as to entitle the plaintiffs, or either of them, to any relief. We must hold, therefore, that there was a compliance with forms of law. There remains to be considered whether this was sufficient. The plaintiffs deny that it is. Their position is that it is against the policy of the law to allow a railroad company to condemn more than one hundred feet in width for a single line of road, though consisting of more than one track, and that if the condemnation is sustained in this case, we should sanction an act done indirectly which it is against the policy of the law to allow to be done directly.

The limitation of the right of condemnation was doubtless fixed at one hundred feet, because that was deemed by the legislature to be all that was necessary, whether the road consisted of a single or double track. But we can conceive that a company might desire to build an additional road which should be lateral to the original road, and operated in connection with it as auxiliary. All the advantages of a double track might be se-

*Margin notes: 2. ——: condemnation of right of way: descriptions in notices.*

*3. ——: eminent domain: lateral lines: statute construed.*

cured, and in addition thereto the advantages of a shorter line or improved grade. What the motives of the defendants were do not distinctly appear, but we apprehend that it was something of this kind. It is reasonable to expect of railroad companies improvements in their roads from time to time as fast as the increasing business of the country shall seem to demand them, and their own ability shall justify them in making them; and we do not believe that there is anything in the legislative policy of Iowa to prevent such improvements, even where they are to be made by building an additional lateral road. Now if a company can be allowed to build such a road, it must be allowed to condemn for it a right of way. And where the articles of incorporation or charter of a company are such as to confer such power so far as they are concerned, we think that there is nothing in the right of way statute to prevent its exercise. We are not now seeking to determine what is the power of the C., B. & Q. R. R. Co. We have not before us its articles of incorporation or charter. We are seeking merely to put a construction upon the right of way statute, and we hold that where a company has the power to build an additional lateral road auxiliary to the original road, that is, a lateral road whose construction and maintenance is possible only upon an independent right of way, the right of way statute does not prevent the condemnation of land for such additional road. If then the C., B. & Q. R. R. Co. lacks the power to build such road, it is simply because its articles of incorporation do not so provide, expressly, or by reasonable implication. But the Chillicothe & Chariton R. R. Co. can build the road, and that, too, even though it derives all its means from the C., B. & Q. R. R. Co., and builds it with the express design of leasing it to that company. Whether that company has the power to take a lease is another question, and one with which we have nothing to do. We think that the court did not err in dismissing the plaintiffs petition.

AFFIRMED.