## Richmond.

BLANTON v. RICHMOND, F. & P. RAILROAD Co.
RICHMOND, F. & P. RAILROAD Co. v. BLANTON.

FEBRUARY 20th, 1890.

1. RAILROAD COMPANIES—*Lateral branches.*—Where by its charter, power is given railroad company to construct branch or lateral roads, such power includes authority to construct a branch line running in the same general direction as the main line; and the fact that the new line will connect the main line with another railroad, makes it none the less a branch road.

2. IDEM—*Time of completion—Case at bar.*—Section 34, charter R., F. & P. R. R. Co., requiring work thereby required of said company to be finished in ten years, refers to building the main track, for doing which within that period the company is promised, by sec. 38, immunity from competition for thirty years.

3. IDEM—*Section 1098, Code 1887,* to promote railroad connections in cities, etc., is not applicable to the case at bar.

Appeal from decree and error to judgment of circuit court of Henrico county rendered November 11 and 22, 1889, respectively, in two cases, in the first whereof T. L. Blanton (the appellant here) was complainant, and the Richmond, Fredericksburg & Potomac railroad company was defendant; and in the last the said company (plaintiff in error here) was plaintiff and said Blanton was defendant. Opinion states the case.

*W. C. Preston, Leake & Carter, W. W. Gordon,* and *Meredith & Cocke,* for the railroad company.

*Pollard & Sands, Courtney & Patterson, Staples & Munford,* and *Bradley T. Johnson,* for T. L. Blanton.

HINTON, J., delivered the opinion of the court.

The above-entitled cases were heard and may be considered together.   The first-mentioned case is an appeal from an order which restrained the Richmond, Fredericksburg and Potomac railroad company from further proceedings to condemn the land of T. L. Blanton, upon the line of road proposed to be constructed by said company to connect its main line with the Richmond and Petersburg railroad company.   The second case is a writ of error to the judgment of the circuit court of Henrico, reversing the judgment of the county court in the condemnation proceedings, and dismissing the same.   The great question in both cases, is whether the company has the power under its charter to build this branch or connecting road; and to this question, although there are one or two subjects of minor importance to be also considered, we will at once address ourselves.

The seventh section of this charter, omitting the first proviso, reads as follows: "The president and directors of the *ᵒ* said company shall be, and they are hereby, invested with all the rights and powers necessary for the construction, repair, and maintaining of a railroad, to be located as aforesaid, with as many sets of tracks as they, or a majority of them, may deem necessary, and may cause to be made; and also to make and construct all works whatsoever which may be necessary and expedient in order to the proper completion of the said railroad; *and they, or a majority of them, may make, or cause to be made, branches or lateral railroads, in any direction whatsoever, in connection with the said railroad, not exceeding ten miles each in length;* and shall have, possess, and may exercise, in the construction, use, and repair of the same, the same rights and powers, and shall be entitled, on the completion of any branch or lateral railroad, to the same rights, privileges, and immunities, and be subject to the same pains, penalties, and obligations in relation to the same, as are hereby

prescribed in relation to their principal line of railroad; and provided, moreover, that no branch or lateral railroad exceeding two miles in length shall be commenced until the expediency of making the same shall have been determined on at a general meeting of the stockholders, by two-thirds of the votes which could be legally given in favor of the same." Then follow ample provisions for the condemnation and acquisition of all land that may be needed for the main road and its branches.

Now, here, it must be conceded, is as broad and unrestricted a grant of power to build branch or lateral railroads as could well have been devised, for the language is not merely that the company may build "several branches" or "several branches in different directions," but the language is that the president and directors, or a majority of them, may make, or cause to be made, "branches or lateral railroads" (that is, an indefinite number of branch or lateral roads) in "any" (that is, in every) "direction whatsoever," thus placing it entirely within the power of the president and directors, where the branch or lateral roads are not more than two miles in length, and where the roads are of greater length within the power of the president and board of directors and two-thirds of the legal voters at any general meeting of stockholders, to say how many and in what directions branch or lateral roads shall be run. The only inquiry which would seem to be left open, then, is whether the contemplated road falls fairly within the designation of a branch or lateral railroad, or is excluded from this category by reason of the fact that it connects with another road. What is a lateral or branch road? The word "lateral," according to Webster, means, "proceeding from the side; as, the lateral branches of a tree; lateral shoots;" and this, we take it, is the sense in which this word is to be understood when we speak of branch or lateral railroads. A lateral railroad is nothing more nor less than an offshoot from the main line or stem. And this is the meaning attributed to it by the supreme

court of Pennsylvania in the case of *McAboy's Appeal*, 107 Pa. St., 558. And, indeed, some of the cases go further, and hold that under the branching power, a branch road may be constructed from the terminus as well as from any other point on the main line of the road. *Western Pa. R. R. Co.'s Appeal*, 99 Pa. St., 162; *Mayor v. Railroad Co.*, 48 Pa. St., 358; *Howard Co. v. Bank*, 108 U. S., 314. In this last cited case the supreme court of the United States says: "The argument * * * is that the main road of the company was established on a line south of the Pacific railroad; that Howard county could not, by subscription, aid in construction of the main line, and could not, by subscription, aid in the construction of a road from the junction of the main line northeasterly through that county, because such road would not be a branch road, but only an unauthorized extension of the main line. We are of opinion that the road constructed through Howard county was, within the meaning of the statute, a branch of the original or main line." This, however, is going much further than it is necessary for us to go in this case, and we shall therefore refrain from any expression of opinion upon the point. It seems to us, however, perfectly clear that we should hold, in accordance with the unbroken current of decision, as well as upon principle, that the mere fact that the contemplated road runs in the same general direction with the main track will not deprive it of the character of a branch or lateral road. *A. & P. Railroad Co. v. St. Louis*, 66 Mo., 255; *Volmer's Appeal*, 115 Pa. St., 166; 1 Wood, Ry. Law, 544.

But does the fact that the Richmond, Fredericksburg & Potomac railroad company was intended to be connected with the Richmond & Petersburg railroad by means of that branch, deprive it of its character as a branch road, and deprive the company of the right to construct it? It is earnestly insisted for Blanton that it does, and for two reasons—*first*, because it will operate to change the southern terminus of the Richmond, Fredericksburg & Potomac railroad company from Richmond,

where it is fixed by the charter; and, *second*, because the company had no power under section 1098 of the Code of 1887 to build the proposed branch until it had been refused permission by the city of Richmond to pass through its limits for the purpose. But both of these views are based upon patent misconceptions, one of fact and the other of law. The company has no purpose of changing its terminus at Richmond. Indeed, the charter requires that one of the termini of the road shall be at Richmond, and it could not, therefore, change it if it would. But in point of fact, as the record shows, this is not its object. It simply proposes to build this branch for the purpose of carrying through business outside of the limits of the city, leaving the passengers and freight destined for Richmond to be delivered there. The supposition that section 1098 of the Code of 1887 has anything to do with this case is equally fallacious. The object of that section, as the title to the original act (see Acts 1855–'56, p. 82, ch. 98) says in so many words, " was to promote railroad connections in cities and in incorporated towns," and to give to railroad companies the right to connect outside of the limits of the city or town where they were refused the power to connect within such towns or cities. It was never designed to deprive these companies of any power to connect they might derive from their charters. Upon what principle, then, can we hold that because of the mere circumstance that this branch road connects those two railroads that it ceases to be a branch or lateral road, and is not authorized by the charter? We know of none. It may be that this right to make of a branch road a connecting link between two roads may have been one of the unforeseen results of the grant of power. But, as it does not change the terminus, serves as a feeder to the main stem, assists the company to develop the country through which it passes, and tends to promote the public convenience both as to trade and travel, it cannot be regarded as obnoxious to any of the objections that have been

urged against it.   *Mayor* v. *Pa. Railroad Co.*, 48 Pa. St., 355, and other cases cited *supra.*

But, while it has been deemed more satisfactory to discuss this question somewhat on principle, yet we hardly think that it can be regarded as an open question in this state; for in the case of *Baltimore & Ohio Railroad Co.* v. *City of Wheeling*, 13 Gratt., 42, decided as far back as 1856, this court settled the principles involved in such a question, and held, in express terms, that the Baltimore & Ohio railroad company had, under the power to build branch or lateral roads, the right to build a branch from Benwood, a point three or more miles from Wheeling, to connect with the Central Ohio road.   That case must be regarded as decisive of this.   The power to build roads like the one in question, being given in plain and unambiguous words, cannot be emasculated by this court by construction, merely because the framers of the law may not have contemplated that such a branch or lateral road might be made to connect the road of which it is an offshoot with some other road.   But it is said that, conceding all this to be true, yet that the right granted by the seventh section of the company's charter to build branch lines is limited by the thirty-fourth section of that charter, which requires " the works hereby required of the Richmond, Fredericksburg & Potomac railroad company " should be " finished within ten years."   This, however, proceeds upon a misapprehension of the meaning of the words " work required " of the company.   Manifestly, the works which were required of this company were the building and equipping of the main stem or track from Richmond to Fredericksburg, as may be seen from a glance at the thirty-eighth section of the charter, by which section the company is promised immunity from competition for thirty years, in the event of the completion of the said railroad from the city of Richmond to the town of Fredericksburg within the time limited by this act.   The right to build these branch or lateral

roads was necessarily and properly left optional with the company, to be exercised as and when the exigencies rendering them necessary should arise. These views are decisive of these cases. It follows that the order of the circuit court in the second of the above-styled cases must be reversed, and the order of the county court be affirmed, and that the order of the circuit court in the first case must be affirmed.

REVERSED IN PART AND AFFIRMED IN PART.