Statement.

## Richmond.

Norfolk and Western Railway Company v. Lynchburg Cotton Mills Company.

January 17, 1907.

1. Eminent Domain—*Power of Legislature—Strict Construction of Grants of Power.*—The right of eminent domain resides in the Legislature, which alone controls the measure of its bestowal, and while the courts may supervise its exercise, they cannot curtail its ligitimate scope where the Legislature has plainly delegated the power to a subordinate agency. Statutes, however, which confer the power of eminent domain are to be strictly construed, as its exercise interferes seriously, and oftentimes vexatiously, with the ordinary rights of property.

2. Eminent Domain—*Railroads—Branch Roads—Parallel Lines—Case at Bar.*—A railroad company cannot, under the guise of constructing a branch line for the purpose of reaching new industries and fresh territory (which it is expressly authorized to do), parallel its main line for a considerable distance confessedly for the chief purpose of relieving the overcrowded condition of its main line. A branch road, as applied to railroads, denotes a road connected indeed with the main line, but not a mere incident of it, or constructed simply to facilitate the business of the chief railway, but designed to have a business of its own for the transportation of persons and property to and from places not reached by the principal road. In the case at bar the proposed new road is not a branch road within the meaning of the special act authorizing the construction of branches, nor is it within the general law authorizing railroad companies to straighten their lines so as to shorten distance or improve grades, since portions of it are more than two miles from the main line, contrary to the provisions of that law. Under these conditions the company cannot condemn land for the new location.

Error to a judgment of the Circuit Court of Campbell

county in condemnation proceedings. Judgment for the de-
fendant. Petitioner assigns error.

*Affirmed.*

The opinion states the case.

*Wm. Hodges Mann* and *F. S. Kirkpatrick,* for the plaintiff
in error.

*Caskie & Coleman* and *Harrison & Leigh,* for the defendant
in error.

Whittle J., delivered the opinion of the Court.

The Norfolk and Western Railway Company brings this
writ of error to a judgment of the Circuit Court of Campbell
county, denying its authority to condemn the land of the de-
fendant in error, the Lynchburg Cotton Mills Company, for the
right of way of a railroad which springs from the main line at
Forest, a station in Bedford county, and extends thence around
the city of Lynchburg, outside the corporate limits, through
the county of Campbell to Concord, another station on the main
line in the county of Appomattox.

The railway company claims the power to condemn the route
in question by virtue of a special act of the General Assembly,
passed February 17, 1900, which provides that it "may locate
and construct or purchase branch railroads not exceeding
twenty-five miles each in length from any point on the line of
its railroad and branches for the purpose of affording transpor-
tation facilities to any mining, manufacturing or industrial
enterprise, or for the purpose of bringing out timber or the
products of any county." Acts 1899-1900, page 423.

The proposed road is 22.1 miles long and reaches in one con-
tinuous sweep between the stations mentioned; and at some
points is more than two miles distant from the main line. The

real question involved is one of power, and in approaching its consideration the rules of construction applicable to this class of cases must not be lost sight of.

In the *City of Charlottesville* v. *Maury,* 96 Va. 383, 386, 31 S. E. 520, 521, it is said: "There is no better settled rule of law than this that statutes which encroach on the personal or property rights of the individual are to be strictly construed, and this is especially the case when it is claimed that the statute delegates to a corporation, whether municipal or private, the right of eminent domain, one of the highest powers of sovereignty pertaining to the state itself, and interfering seriously, and oftentimes vexatiously, with the ordinary rights of property." Cooley on Const. Lim. 660.

"All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other." Lewis on Eminent Domain (2d Ed.), section 254.

This principle is illustrated by numerous decisions of this court. *A. & T. Ry. Co.* v. *A. & W. Ry. Co.,* 75 Va. 780, 40 Am. Rep. 743; *Painter* v. *St. Clair,* 98 Va. 85, 34 S. E. 989; *C. & O. Ry. Co.* v. *Walker,* 100 Va. 69, 76, 40 S. E. 633, 914.

But the rule is not in conflict with the doctrine that where the Legislature has plainly delegated the power of eminent domain to a subordinate agency, while the courts may supervise the exercise of the power, they cannot curtail its legitimate scope. The right of eminent domain resides in the Legislature, which alone controls the measure of its bestowal.

It was clearly the design of the special act to enable the parent road, through the instrumentality of branch roads, to increase the volume of its business by entering and developing territory and reaching freight-yielding industries otherwise inaccessible to the main line. Yet it is obvious from the evidence that the dominant purpose of the railway company is to relieve traffic congestion by practically paralleling the main

line between Forest and Concord. The construction of this auxiliary parallel section of road is, therefore, not only outside the purview of the special act, but is also violative of the spirit of the general statute (section 1105f, sub-section 19, Virginia Code, 1904), which, while it authorizes any railroad company chartered by the state to change the location of any part of its road between existing termini to straighten the line so as to shorten distance or improve grades, expressly forbids that the relocated road shall be at a greater distance than one mile from any station already established on the existing line, or more than two miles away from the original line at any point.

The cases to which our attention has been called, construing cognate statutes, announce the prevailing doctrine that such branch roads may be located in the same general direction as the main line, and, when permissible under their charters or general statutes, may connect the main road with other railroads. This was the principle enunciated in *B. & O. R. R. Co.* v. *City of Wheeling,* 13 Gratt. 40, which was followed in *Blanton* v. *R., F. & P. R. R. Co.,* 86 Va. 618, 10 S. E. 925. In the latter case a number of decisions from other jurisdictions of like import are cited. We have seen no case which, under a statute of similar scope with the Virginia act, sustains the pretension of the plaintiff in error. The following cases chiefly relied on as being fairly in point are readily distinguishable:

*Attorney-General* v. *G. & H. Ry. Co.* (N. J. Eq.), 48 Atl. 568, arose under a statute which declared: "That whenever the railroads of any railroad corporations . . . shall intersect or cross each other, or shall approach each other within a distance of one mile, and such corporations shall agree to connect their said railroads with each other, it shall be lawful for either corporation to determine upon constructing a branch railroad or railroads so as to effect such connection." The court in construing the act observes: "The case in hand falls directly within this statute. It is no objection to the legality of the proposed branch railroad that it will leave the main line on one

side of the connection and return to it on the other. To compel traffic to be inconveniently carried past a natural point of departure on one side or the other and then be sent backward to the connecting point, with the alternative of laying out two branches, one from each direction, would be an unreasonable construction of the act." The manifest object of that act was to effect traffic connections between independent railroads, and the court correctly held that that purpose was conveniently subserved in the mode adopted.

In the other case, *Lower* v. *C. B. & Q. R. Co.,* 59 Ia. 563, 13 N. W. 718, it was decided, that though a railroad company had not authority to condemn a right of way for a lateral line, it might, nevertheless, lease a line from another company, composed of its own stockholders, possessing that power.

As remarked, the Virginia act authorizes the construction of a branch line for the express purpose of reaching new industries and fresh territory, and no other; and to enlarge the range of the enactment by judicial interpretation so as to allow the railway company to parallel its existing line, confessedly for the chief purpose of relieving the overcrowded condition of the main line, would be to set at naught the salutary rules of interpretation adverted to, which demand a strict rather than a liberal construction of statutes in derogation of common right.

In *Akers* v. *Canal Company,* 43 N. J. L. 110, 112, the court has formulated the following definition of "a branch road," in which we entirely concur: "A branch road, as applied to railroads, denotes a road connected indeed with the main line, but not a mere incident of it, or constructed simply to facilitate the business of the chief railway, but designed to have a business of its own, for the transportation of persons and property to and from places not reached by the principal road."

It is within common knowledge that the immense coal fields and mineral and timber-bearing regions of Virginia and West Virginia have for years been in process of development by means of numerous branch roads, built under similar statutes,

which fall precisely within the foregoing definition, thus affording a practical construction of these legislative grants of power, which, to say the least, is persuasive authority in favor of the correctness of our view in this case. The proposed road, which, with the existing line, forms a loop, can with no more propriety be denominated a branch than could parts a river the waters of which have been separated in their flow by an island in mid-stream, be characterized as branches of that stream.

Other important questions touching the general charter powers of the railway company were submitted, but the construction which we have placed upon the special act renders it unnecessary to consider them.

For these reasons the judgment of the Circuit Court must be affirmed.

*Affirmed.*