H. L. ARMSTRONG *v.* ILLINOIS CENTRAL RAILROAD Co. *et al.* (No. 3.)*

*(Jackson.* April Term, 1926.)

1. **EMINENT DOMAIN.** Evidence held not to show that railroads acquired possession of complainant's land by fraud so as to be precluded from denying complainant's right to injunctive relief and remanding him to rights under statute (Shannon's Annotated Code, section 1866).

Evidence *held* not to show that railroads acquired possession of complainant's land for construction of branch line by fraud so as to be precluded from denying complainant's right to injunctive relief and remanding him to his action for compensation under Shannon's Annotated Code, section 1866. (*Post, pp.* 290-294.)

2. **EMINENT DOMAIN.**

That railroads' possession of complainant's land acquired for construction of branch line was illegal did not entitle complainant to dispossess railroads by injunction. (*Post, pp.* 290-294.)

Cases cited and approved: Colcough v. N. & R. R. Co., 39 Tenn., 172; Tennessee & A. Co. v. Adams, 40 Tenn., 597; Railroad v. Cochrane, 71 Tenn., 479; Parker v. Railroad, 81 Tenn., 670; Saunders v. Railroad, 101 Tenn., 206; Doty v. Tel. & Tel. Co., 123 Tenn., 329.

Case cited and distinguished: Tenn. Coal, Iron & Railroad Co. v. Paint Rock Flume & Transportation Co., 128 Tenn., 282.

Codes cited and construed: Secs. 1861, 1866 (S.).

3. **EMINENT DOMAIN.** Railroads occupying complainant's land held not precluded from remitting him to his action for compensation because they were setting up claim to such land adversely to complainant's right and title (Shannon's Annotated Code, section 1866).

Railroads occupying complainant's land for construction of branch line *held* not precluded from remitting complainant under Shannon's Annotated Code, section 1866, to his action for compensation when he sought injunctive relief because they were setting up claim to such land adversely to complainant's right and title. (*Post, p.* 294.)

Cases cited and approved: Railroad v. Jennings, 130 Tenn., 450; Saunders v. Railroad, 101 Tenn., 206; Chambers v. Railroad, 130 Tenn., 459; Lea v. Railroad, 135 Tenn., 560.

4. **EMINENT DOMAIN.** Contemplated use of property occupied for branch line of railroads to connect with important industries held public in nature where railroads were required to handle business of public generally so as to authorize railroads to remit owner to action for compensation (Shannon's Annotated Code, section 1866).

Contemplated use of property occupied by railroads for construction of branch line *held* public in nature, authorizing railroads to remit owner when he sought injunctive relief to his action for compensation under Shannon's Annotated Code, section 1866, where such line was necessary to connect important industries with railroads, and they were required without discrimination to handle business of general public. (*Post, pp.* 294, 295.)

5. **EMINENT DOMAIN.** Branch track to connect important industries with main line of railroad in which general public has a right of use

held a ''public use'' for which private property may be taken under power of eminent domain.

A branch track necessary to proper operation of main line of a railroad or which may be necessary to connect important industries or even a single industry with main line in which general public has a right of use, although such branch track may also subserve private interests, and private persons may contribute to expense thereof, is a "public use" for which private property may be taken under power of eminent domain.    (*Post, pp.* 295-296.)

Cases cited and approved: State v. Memphis, 147 Tenn., 676; Bashor v. Bowman, 133 Tenn., 275; Ryan v. Terminal Co., 102 Tenn., 111; Rindge Co. v. Los Angeles, 262 U. S., 707; Chicago, etc., R. Co. v. Ochs, 249 U. S., 420; Union Lime Co. v. Chicago, etc., R. Co., 233 U. S., 211; Bradley v. Railroad, 147 Ga., 22; Dotson v. Railroad, 81 Kans., 816; Ulmer v. Railroad Co., 98 Me., 579; State v. Thurston, 83 Wash., 445; Gulf & R. Co. v. Adkinson, 117 Miss., 131; De Camp v. Railroad, 47 N. J. Law, 44; Chesapeake Stone Co. v. Moreland, 126 Ky., 656; Riley v. Railroad, 142 Ky., 67; Moody v. Benson, 109 Or., 414; Roberts v. Williams, 15 Ark., 49; St. Louis, etc., R. Co. v. Petty, 57 Ark., 359; Central Pacific v. Feldman, 152 Cal., 309.

6.  **EMINENT DOMAIN.** Foreign and domestic railroad corporations can acquire private property for construction of branch road of public nature to connect with important industries either by purchase or condemnation notwithstanding that proposed road would not connect with main line of domestic corporation; ''lateral road;'' ''branch road;'' ''lateral'' (Shannon's Annotated Code, section 1844; Acts 1895, chapter 152; Acts 1903, chapter 210; Acts 1911, chapter 70; Words and Phrases, Lateral Road).

Under Acts 1911, chapter 70, extending and engaging powers, already conferred under Shannon's Annotated Code, section 1844 (Acts 1895, chapter 152; Acts 1903, chapter 210), upon domestic railroad corporation to build branch roads, to foreign railroad corporations, foreign railroad corporations owning and operating roads in the State and domestic railroad corporation *held* authorized to acquire private property for a branch road of public nature to connect with important industries either by purchase

or condemnation, notwithstanding that contemplated road had no connection with main line of domestic railroad corporation; "lateral road" and "branch road" being used interchangeably in statutes, and "lateral" meaning proceeding from the side, etc. (citing Words and Phrases, Lateral Road). (*Post, pp.* 296, 302.)

Acts cited and construed: Acts 1895, ch. 152; Acts 1903, ch. 210.

Cases cited and approved: Blanton v. Richmond, F. & P. R. Co., 86 Va., 618; Newhall v. Galena & C. U. R. Co., 14 Ill., 273.

Code cited and construed: Sec. 1844(S.); Secs. 1326-1348(1858).

7. **APPEAL AND ERROR.** Court of appeals in reversing judgment in favor of complainant seeking to restrain railroads from taking private property properly remanded cause to chancery court for assessment of damages (Shannon's Annotated Code, section 1866).

Where complainant voluntarily chose chancery court in suit to enjoin railroads from taking his property for construction of branch road, and court assumed jurisdiction for that purpose, court of appeals in reversing judgment for complainant properly remanded cause to chancery court for assessment of damages accruing to complainant under Shannon's Annotated Code, section 1866, since chancery court retained jurisdiction for all purposes. (*Post, pp.* 302, 303.)

Cases cited and approved: Chambers v. Railroad, 130 Tenn., 459; Swift & Co. v. Warehouse Co., 128 Tenn., 82.

8. **EMINENT DOMAIN.** Evidence held not to show that land taken by railroads for construction of branch road was public street.

Land taken by railroads for construction of branch road *held* not to be public street where it was not shown that dedication of street by registration of plat by owner was ever accepted, or that land was ever actually used as a street, and dedication if made had been revoked, and street and various lots platted thereon consolidated and held by respective owners as one tract of land. (*Post,* 303, 304.)

9. **EMINENT DOMAIN.** Railroads illegally in possession of complainant's land not entitled to damages for wrongful suing out of injunction (Shannon's Annotated Code, section 1866).

Armstrong v. Ill. Cent. R. Co.

Railroads which were in possession of complainant's land illegally when injunction suit was instituted *held*, not entitled to recover damages for wrongful suing out of injunction in view of Shannon's Annotated Code, section 1866, it being immaterial that they entered on the property in good faith and in belief that owner did not own title thereto.  (*Post, pp.* 304, 305.)

10.  **EMINENT DOMAIN.**

Shannon's Annotated Code, section 1866, *held* not to authorize public service corporation to take possession of land desired prior to a legal appropriation, and such taking is illegal.  (*Post*, 304, 305.)

Cases cited and approved: Duck River R. Co. v. Cochrane, 71 Tenn., 478; Parker v. Railroad, 81 Tenn., 669; Watson v. Holmes, 8 *Ky.* Law Rep., 780; East Tenn. Tel. Co. v. Anderson County Tel. Co., 115 Ky., 488; Chicago, etc., R. Co. v. Whitney, 152 Iowa, 520; Guthrie v. Biethan, 25 Idaho, 706.

Case cited and distinguished: Railroad v. Railroad, 131 F., 657.

*Headnotes 1. Eminent Domain, 20 C. J., Section 565; 2. Eminent Domain, 20 C. J., Section 528; 3. Eminent Domain, 20 C. J., Section 522; 4. Eminent Domain, 20 C. J., Section 49; 5. Eminent Domain, 20 C. J., Section 49; 6. Eminent Domain, 20 C. J., Section 49; 7. Appeal and Error, 4 C. J., Section 3234; 8. Eminent Domain, 20 C. J., Section 565; 9. Eminent Domain, 20 C. J., Section 548 (Anno); 10. Eminent Domain, 20 C. J., Section 379 (Anno).

FROM SHELBY.

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals, from the Supreme Court.—Hon. F. H. Heiskell, Chancellor.

Taylor & Goodman, for plaintiff in error.

BURCH, MINOR & McKAY, for defendants in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The bill in this cause was filed by the complainant, H. L. Armstrong, against the defendants, Illinois Central Railroad Company, St. Louis & San Francisco Railroad Company, and the Union Railroad Company, for the purpose of enjoining them from laying a track over and across his fifteen-acre tract of land located in Memphis.

The Union Railroad Company is a domestic corporation. The other defendants are foreign corporations, but all own and operate railroads in Tennessee.

The complainant's tract of land fronts south on South parkway seven hundred three feet, and has a depth of nine hundred twenty-two feet. It is also bounded on the east by Louisiana street.

The proposed track was to cross said land from east to west at a distance of about three hundred seventy-five feet north of South parkway.

When the bill was filed the defendants were in possession of the land across which they proposed laying a track, had graded same, and were preparing to place cross-ties and rails when they were enjoined. The defendants contended that the thirty-foot strip graded was a public street known as Stockley avenue, and that they took possession of same by virtue of authority granted to them by the city of Memphis.

The land in question is located in an open country in the suburbs of South Memphis.

The Ford Motor Company has constructed a large assembling plant a short distance west of complainant's land, and there will be shipped to and from this plant alone twenty thousand cars of freight per annum.

The record further shows that other large industrial corporations are considering the location of their plants in that vicinity, and, further, that this locality is admirably adapted for such purpose, and that the defendants were extending a branch line to this section for the purpose of developing an industrial center, and to transport freight to and from the Ford plant, and such other plants as may be established there.

The branch line in question extends in a southerly direction from the main line of the Frisco Railroad, although it is to cross complainant's land in a due east and west direction at a distance of one-half a mile from the main track.

The defendants acquired, by purchase, the right of way for this branch line over all the lands to be traversed except that of complainant. They did not negotiate with complainant for a right of way across his land for the reason that they were advised by counsel that Stockley avenue was one of the streets of the city and that the complainant did not own same.

The chancellor and the court of appeals concurred in holding that Stockley avenue was not a public street, but that complainant had a fee-simple title to same.

Upon the hearing the chancellor enjoined the defendants from laying a railroad track across complainant's land.

Upon an appeal the court of appeals reversed the chancellor, and held that the complainant was only entitled

153  Tenn.—19.)

to the relief afforded him by section 1866 of Shannon's Annotated Code, which is as follows:

"If, however, such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or he may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest."

That court remanded the cause to the chancery court for a reference as to damages upon the theory that the chancery court, having acquired jurisdiction for the purpose of decreeing title to the property involved, would retain jurisdiction for the ascertainment of damages.

Each party filed a petition for *certiorari,* and the cause has been splendidly briefed and ably argued at the bar of this court.

We will first dispose of the questions raised by the complainant, but in doing so we find it unnecessary to set forth his lengthy assignments of error *in hæc verba.*

(1)   Did the court of appeals commit error in denying complainant injunctive relief, and remanding him to his action for compensation under said section 1866?

(a)   It is said that defendants acquired possession of complainant's land by fraud, and for that reason they will be repelled from a court of equity. If true, in fact, that possession were so acquired, then such possession was unquestionably illegal. But the mere fact that the

possession is illegal does not entitle complainant to dispossess the defendants by injunction.

This court, in *Tennessee Coal, Iron & Railroad Co.* v. *Paint Rock Flume & Transportation Co.*, 160 S. W., 522, 128 Tenn., 282, said:

"This court has repeatedly held that the several remedies, given by our statutes to parties whose land has been occupied for purposes of internal improvement by public service corporations, are exclusive. That is to say, the landowner must obtain redress in the condemnation proceedings, or in an appeal therefrom (Shannon's Code, section 1861), or he may, upon his own petition for a jury of inquest, have his damages assessed, or he may sue for damages in the ordinary way (Shannon's Code, section 1866). He cannot bring a suit of ejectment against the corporation, nor is he entitled to an injunction which will have the effect of dispossessing such corporation from a right of way already occupied by it. *Colcough* v. *N. & R. R. Co.*, 2 Head, 172; *Tennessee & A. Co.* v. *Adams*, 3 Head, 597; *Railroad* v. *Cochrane*, 3 Lea, 479; *Parker* v. *Railroad*, 13 Lea, 670; *Saunders* v. *Railroad*, 47 S. W., 155, 101 Tenn., 206; *Doty* v. *Telephone & Telegraph Co.*, 130 S. W., 1053, 123 Tenn., 329, Ann. Cas., 1912C, 167.

"The flume company, therefore, if it be a public service corporation lawfully endowed with the right of eminent domain, cannot be deprived of the easement which it has obtained over the lands of complainant, even though it may have secured such right of way in an illegal manner. The complainant must look to its statutory remedies for redress."

The statute says that where the public service corporation is in possession the owner shall proceed in a cer-

tain way, and it says nothing about the method by which the possession was acquired.

Necessarily whenever a railroad takes possession of the property of another, without authority, its possession is illegal.

We deem it unnecessary to pursue this question further for the reason that we find, as did the court of appeals, that the defendant did not acquire possession of this property by means of fraud. The property was open, uninclosed, and vacant. During the first week of May the defendants staked off a right of way through what they conceived to be Stockley avenue, and the complainant knew about this. Some time prior to May the 13th they drafted a map showing the proposed location of this branch track, and according to said map it extended through Stockley avenue.

The defendant furnished the real estate agent of complainant a copy of said map, and he, in turn, exhibited same to complainant. Thereupon the complainant, by letter and in personal conversation with defendants' engineers, set up his claim to the property in question, and denied the existence of Stockley avenue. It is quite clear to us that complainant knew that defendants were preparing to construct a railroad track through Stockley avenue, and that his conception of the law was to enjoin them after the work was begun. There was no occasion for the defendants to act secretly or fraudulently. All they had to do to remit complainant to the remedy provided in section 1866 was to enter upon the land with their force and begin work, and that is what they did.

After staking off the right of way and preparing the map showing the location of the road, the defendants

submitted proposals to contractors for the construction of the roadbed.

It was necessary to open a cut on the Robertson land immediately west of complainant, and to remove there-from thirty-three thousand cubic yards of earth, and it became necessary for the contractors, before submitting bids, to find a place to deposit such earth removed from the Robertson land. The complainant's tract was lower than the bed of South parkway, and he agreed with two of the contractors that they could deposit such earth upon his land. One of these was a man by the name of Roach. The contract to grade the roadbed was awarded to Roach, and he thereupon entered into a written con-tract with complainant for the deposit of the thirty-three thousand cubic yards of earth from the Robertson tract onto his tract. Roach thereupon began excavating upon the Robertson tract, and used one thousand cubic yards of the earth in making a fill on Stockley avenue; the remain-ing thirty-two thousand cubic yards, or thereabout, was deposited on other portions of complainant's tract.

Roach testified that he had no idea of practicing any fraud on complainant, and assumed that an arrangement had been made for the construction of the roadbed through Stockley avenue, and did not even know that a controversy existed between the parties.

The officers of the railroads testified to the same effect.

The original bill, as well as the amended bill, charged specifically that defendant was in possession of the strip in controversy, and this was admitted in the answer. In the original bill not a word was said about defendant's possession being acquired fraudulently, and that appears for the first time in the amended bill, and quite likely

after complainant ascertained that, upon the allegations of his original bill, he could not obtain the relief sought.

(b) It is next insisted that defendants cannot remit complainant to said section 1866 of Shannon's Annotated Code for the reason that they were not in possession of said land as condemnors, thereby admitting complainant's title, but were setting up claim to said strip of land adversely to complainant's right and title to the same.

In support of this insistence complainant relies upon the case of *Railroad* v. *Jennings,* 171 S. W., 82, 130 Tenn., 450. In that case the railroad company was claiming adversely to the owner, and the court applied section 1866 at the instance of the owner, and the section was also applied in the following cases where the railroad did not enter as condemnor: *Saunders* v. *Railroad,* 47 S. W., 155, 101 Tenn., 206; *Chambers* v. *Railroad,* 171 S. W., 84, 130 Tenn., 459; *Lea* v. *Railroad,* 188 S. W., 215, 135 Tenn., 560.

Section 1866 does not make adverse possession the test as to its applicability, and we do not feel justified in doing so, especially since the court has heretofore applied it in the cases enumerated where the possession was adverse.

(2) Was the contemplated use of the property involved public or private in its nature? Both upon reason and authority it was clearly of a public nature.

In addition to the facts already stated, the city of Memphis, in authorizing the construction of this branch road, by ordinance, provided by its tenth section the following:

"Be it further ordained, that the track or tracks hereby authorized shall constitute a part of the terminal

tracks and terminal facilities of said railroad companies. And said railroad companies shall, without discrimination, switch to and from said tracks for other railroad companies and handle the business of the general public—all to be done under such charges and regulations as may be prescribed by the Interstate Commerce Commission and the Tennessee Railroad and Public Utilities Commission.''

The general rule is thus stated in 20 Corpus Juris, 568:

''A branch or lateral road or spur track necessary to the proper operation of the main line of a railroad, or which may be necessary to connect important industries, or even a single industry, with the main line or other public highways, provided, however, that the general public has a right to use it, although such branch or lateral road or spur track may also subserve private interests, and private persons may contribute to the expense thereof, is a public use for which private property may be taken under the power of eminent domain. The fact that the railroad company limits the use of a switch track to the carriage of freight only does not make such use private.''

Counsel for complainant do not stress this point in their brief, and we will not, therefore, deal extensively with this question, but will merely cite the authorities which, in our opinion, support our conclusions. *State* v. *Memphis,* 251 S. W., 46, 147 Tenn., 676, 27 A. L. R., 1257; *Bashor* v. *Bowman,* 180 S. W., 326, 133 Tenn., 275; *Ryan* v. *Terminal Co.,* 50 S. W., 744, 102 Tenn., 111, 45 L. R. A., 303; *Rindge Co.* v. *Los Angeles,* 43 S. Ct., 689, 262 U. S., 707, 67 L. Ed., 1186; *Chicago, etc., R. Co.* v. *Ochs,* 39 S. Ct., 343, 249 U. S., 420, 63 L. Ed., 679; *Union*

*Lime Co.* v. *Chicago, etc., R. Co.,* 34 S. Ct., 522, 233 U. S., 211, 58 L. Ed., 924; *Bradley* v. *Railroad,* 92 S. E., 539, 147 Ga., 22; *Dotson* v. *Railroad,* 106 P., 1045, 81 Kan., 816; *Ulmer* v. *Railroad Co.,* 57 A., 1001, 98 Me., 579, 66 L. R. A., 393; *State* v. *Thurston,* 145 P., 421, 148 P., 7, 83 Wash., 445; *Gulf & R. Co.* v. *Adkinson,* 77 So., 954, 117 Miss., 131; *De Camp* v. *Railroad,* 47 N. J. Law, 44; *Chesapeake Stone Co. v. Moreland,* 103 S. W., 254, 126 Ky., 656, 16 L. R. A. (N. S.), 479; *Riley* v. *Railroad,* 133 S. W., 971, 142 Ky., 67, 35 L. R. A. (N. S.), 639, Ann. Cas., 1912D, 230; *Moody* v. *Benson,* 220 P., 561, 109 Or., 414; *Roberts* v. *Williams,* 15 Ark., 49; *St. Louis, etc., R. Co.* v. *Petty,* 21 S. W., 884, 57 Ark., 359, 20 L. R. A., 434; *Central Pacific* v. *Feldman,* 92 P., 849, 152 Cal., 309.

(3) Assuming the use of this property to be of a public nature, is there any express legislative authority empowering defendants to condemn same?

It is said that while the Union Railway Company is a domestic corporation it is without such power because the record fails to show that this contemplated road has any connection with its main line, or is a branch thereof.

For the purposes of this cause we will assume this contention to be true. It is said that defendants cannot condemn under the general condemnation statute (section 1844 of Shannon's Annotated Code), for the reason that under that statute the railroad is limited to a main line from one terminal to another, and to necessary switches, depot grounds, etc.

It is next said that defendant cannot condemn under chapter 152 of the Acts of 1895, because that act only authorizes railroad companies chartered under the laws of Tennessee to build lateral roads, and this may be

conceded.    The caption and first section of said act are as follows:

"An act allowing railroad companies chartered under the laws of the State of Tennessee, to build lateral roads.

"Section 1.    Be it enacted by the general assembly of the State of Tennessee, that any railroad company chartered under the laws of the State of Tennessee, and now operating, or which may hereafter operate any line of railroad within this State, is hereby granted authority and power to build lateral roads, not exceeding eight miles in length, extending from the main stem of said line of railroad to any mill, quarry, mine, manufacturing plant, or the bank of any navigable stream without the making of any amendment to the charter of said railroad; provided, private property shall not be taken for the uses of such railroad company, or the construction of such lateral branches, without condemnation thereof, as now provided by law."

It is next insisted that defendants are without power under chapter 210 of the Acts of 1903, the caption and first section of which are as follows:

"An act to amend the first section of an act entitled 'An act allowing railroad companies chartered under the laws of the State of Tennessee, to build lateral roads, being chapter 152 of the Acts of 1895.

"Section 1.    Be it enacted by the general assembly of the State of Tennessee, that the first section of the act entitled 'An act to allow railroad companies chartered under the laws of the State of Tennessee to build lateral roads,' being chapter 152 of the Acts of 1895, approved

May 14, 1895, be and the same is hereby amended to read as follows, to-wit:

" 'That any railroad company chartered under the laws of the State of Tennessee or any other State or States, and now operating or which may hereafter operate any line of railroad in this State, is hereby granted authority and power to build lateral roads, not exceeding fifteen miles in length, extending from the main stem, or any branch of said line of railroad to any mill, quarry, mine, manufacturing plant, or to the bank of any navigable stream without the making of any amendment to the charter of said railroad; provided, private property shall not be taken for the uses of such railroad company or the construction of such lateral branches, without the condemnation thereof as now provided by law.' "

It is said that this act is unconstitutional because its body is broader than its caption, in that the former makes it applicable to foreign as well as domestic railroad corporations, while, by its caption, it is limited to domestic corporations.

Upon the question of the validity of the act we have been presented with a most earnest and able appeal for the abolition of the "elision doctrine" with respect to the two subject clause of the constitution. This would raise a serious question were we called upon to decide same, but, for the purposes of this controversy, we deem it immaterial whether the act of 1903 be treated as valid or invalid. If treated as valid, properly construed, it simply amends the act of 1895 so as to increase the length of the "lateral roads" from not exceeding eight miles to not exceeding fifteen miles, and to extend these lateral roads, not merely from the main stem, but from any

branch line.  Under the facts of this cause it affords the defendants no additional relief to that provided in the act of 1895.  It is proper to state that the terms "lateral road" and "branch road" are used interchangeably, although technically different.

In 5 Words & Phrases, First Series, p. 4013, it is said:

"According to Webster 'lateral' means proceeding from the side, as the lateral branches of a tree, lateral shoots; and this is the sense in which this word is to be understood when branch or lateral railroads are spoken of, and a lateral railroad is nothing more than an offshoot from the main line or stem, and the mere fact that a contemplated road runs in the same general direction with the main track will not deprive it of the character of a branch or lateral road, within the meaning of a charter giving the railroad power to construct branch or lateral roads. *Blanton* v. *Richmond, F. & P. R. Co.,* 10 S. E., 925, 926, 86 Va., 618.

"A 'lateral road' is but another name for a branch road.  Both must have a principal road from which they proceed.  They are appendages to, and are properly a part of, the main line, and must proceed from some part of the main trunk between its *termini. Newhall* v. *Galena & C. U. R. Co.,* 14 Ill. (4 Peck), 273, 276.

"Whether a particular portion of a railway is a lateral or branch railroad, or not, does not depend upon its length or directions; but it must be connected with and lead from a main line already constructed in order to be such. . . ."

Up to this point Tennessee railroad corporations are empowered to build branch roads, not exceeding fifteen

miles in length, to any "mill, quarry, mine, manufacturing plant, or to the bank of any navigable stream."

In this situation the act of 1911 was passed, and it is as follows:

".An act extending the powers of a railroad company or railroad companies owning or operating, or which may hereafter own or operate, a railroad or railroads, or any part thereof, in the State of Tennessee; and to authorize and empower it or them to build cut-off lines, branch lines, and other lines for the purpose of the better and more expeditious handling of the public business in the transportation of freight and passengers; and to construct, build, or extend any main line, branch line, or other line into and to serve other and different territory; and to build second main or double tracks, turnouts, switches, spur tracks, sidetracks, stations, depots, and terminal facilities; and to purchase or acquire by condemnation real estate necessary or proper for such purposes, and to specify the method of procedure in such cases.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that any railroad company or railroad companies owning or operating any railroad or any part thereof in the State of Tennessee, or that may hereafter do so, whether chartered under the laws of the State of Tennessee or under the laws of any other State or States, be, and it is or they are, hereby authorized and empowered to build cut-off lines, branch lines, and other lines for the purpose of the better and more expeditious handling of the public business in the transportation of freight and passengers, and to construct, build, or extend any main line, branch line, or other line into, and to serve, other and different territory, and to

build second main, or double tracks, turnouts, switches, spur tracks, side tracks, stations, depots, and terminal facilities.

"Sec. 2.   Be it further enacted, that for the purposes mentioned in the foregoing section, authority and power are hereby granted to, and vested in, such railroad company or companies to acquire by purchase and to hold such real estate as may be necessary or proper, and power and authority are also granted said railroad company or companies to acquire such real estate as may be necessary or proper for the purposes mentioned in the foregoing section by condemnation of private property for works of internal improvement as set forth in sections 1326 to 1348, inclusive, of the Code of 1858.

"Sec. 3.   Be it further enacted, that the powers and authority conferred by this act are in addition to the powers and authority which railroad companies have, or may have, by virtue of their charters or by virtue of the general laws of the State of Tennessee as they now exist.

"Sec. 4.   Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it."

Laws 1911, chapter 70.

This act is very broad and comprehensive in its scope, and covers every situation that modern conditions demand with respect to the extension of transportation facilities.  It does not supersede or invalidate existing powers, but enlarges and adds to them.  Its object was to extend the powers already conferred upon domestic corporations to foreign corporations operating a road within this State in an enlarged way, and also remove the

fifteen-mile limitation on domestic railroads, as well as the limitation as to the particular enterprises to which they could extend branch lines, and providing that both domestic and foreign railroad companies could build branch lines (without restriction) when necessary ''for the purpose of the better and more expeditious handling of the public business in the transportation of freight and passengers.'' The act then went a step further, and authorized either class of these corporations to ''construct, build, or extend any main line, branch line, or other line into, and to serve, other and different territory,'' and, finally, to build a second main or double track, with necessary switches, spur tracks, etc.

This, as we interpret the act, is its clearly expressed scope and purpose; and we feel no hesitancy in saying that, under its provisions the defendants had the right to acquire complainant's property for a branch road, either by purchase or condemnation.

(4) Did the court of appeals commit error in remanding the cause to the chancery court for the assessment of damages accruing to complainant by virtue of section 1866 of Shannon's Annotated Code? That court followed the procedure approved by this court in *Chambers* v. *Railroad,* 171 S. W., 84, 130 Tenn., 459.

The complainant insists that that court should have dismissed the suit and enjoined defendants from pleading the statute of limitations of one year, and cite *Swift & Co.* v. *Warehouse Co.,* 158 S. W., 480, 128 Tenn., 82. In that case the court did not acquire jurisdiction for any purpose, and hence was impelled to dismiss the suit.

In *Chambers* v. *Railroad,* supra, the court acquired jurisdiction by virtue of the controversy as to the title to

the property, and, having acquired jurisdiction for that purpose, upon familiar maxims of equity, retained jurisdiction for the purpose of assessing damages.

The complainant could have raised the question of title as to Stockley avenue in the circuit court had he instituted his proceeding under section 1866 in that court, but he voluntarily chose the chancery court as the forum to determine his rights, and that court, having assumed jurisdiction for such purpose, will retain jurisdiction for all purposes.

Our conclusion is that all of the complainant's assignments of error are without merit, and they will be overruled.

We will now dispose of the assignments of error interposed by the defendants.

(1)   Is Stockley avenue a public street?

As previously stated, the chancellor and the court of appeals concurred in holding that it was not. There is no assignment of error that there is no evidence to support their finding. We have carefully considered this matter upon its merits and find that, in the first place, there is no evidence that the dedication of this street by Stockley in 1859, by registration of a plat, was ever accepted. There is no evidence that it was ever actually used as a street, but as far back as the memory of any of the witnesses go it was inclosed and cultivated as a truck garden with the other portions of complainant's tract of land.

In the second place, if this street were ever dedicated the dedication was revoked many years ago, and the said street and the various lots platted thereon were consolidated, and held by the respective owners as one tract of

land.  The descriptions contained in the various deeds by which these lots were transferred negative the idea that Stockley retained title to the fee in this street, and that his heirs now own same.

(2)   Did the court of appeals commit error in declining to order a reference as to the damages sustained by defendants for the alleged wrongful suing out of the injunction?

This question must be answered in the negative.  Section 1866 of Shannon's Annotated Code in no sense authorizes a public service corporation to take possession of the land desired prior to a legal appropriation, and such taking is illegal.

Mr. Justice LURTON, in *Railroad* v. *Railroad,* 131 F., 657, 66 C. C. A., 601, in construing this section of the Code,  said:

"Section 1866 is supposed to recognize some right to take possession prior to an actual legal appropriation. This is a mistake.  This section simply provides that an owner whose land has been taken away may petition for a jury of inquest, and have the damages assessed as if upon a petition by the company for a condemnation, or 'sue for damages in the ordinary way.'  Instead of authorizing by implication or otherwise an occupancy without the consent of the owner, the statute simply intends to enlarge the remedies of the owner in case possession is taken either with or without the consent of the owner so as to permit him to sue for an assessment of damages by a jury of inquest, or resort to any other common-law remedy.   The section has been construed in *Duck River R. Co.* v. *Cochrane,* 3 Lea, 478, and *Parker* v. *Railroad,* 13 Lea, 669; and in the last-named case a bill was sus-

tained which sought to enjoin further possession or occupancy taken against the owner's will.''

In Gibson's Suits in Chancery, section 863, it is said: ''The measure of damages on injunction bonds. No damages will be allowed which are not the actual, natural, and proximate result of the injury arising from the suspension or violation of the defendant's vested legal rights by the injunction.''

The mere fact that defendants entered upon this property in good faith, and upon their belief that complainant did not own the title to this property, does not change the result. But for the fact that defendants believed that complainant had no right to this property it is not likely that they would have entered upon same in advance of legal appropriation; but, since they were in possession of same illegally when this suit was instituted, we are of the opinion that they are not entitled to recover any damages as the result of the suing out of the injunction in this cause. The following cases, cited by complainant in his brief, support this conclusion: *Watson* v. *Holmes,* 8 Ky. Law Rep., 780; *East Tennessee Telephone Co.* v. *Anderson County Telephone Co.,* 74 S. W., 218, 115 Ky., 488; *Chicago, etc., R. Co.* v. *Whitney,* 132 N. W., 840, 152 Iowa, 520; *Guthrie* v. *Biethan,* 139 P., 718, 25 Idaho, 706.

After giving this cause a careful consideration, we have concluded that the court of appeals properly determined the many questions involved, and it results that its decree will be in all things affirmed.

The costs accrued in this court will be paid one-half by complainant and the other half by defendants.