**Spiegel v. Greenberg**

*Jerome M. Libenson*, for plaintiffs.
*Martin Lubow*, for defendants.

CERCONE, J., March 18, 1965.—This is an action for recovery of money advanced by plaintiff, Burton B. Spiegel, to defendant, Jack J. Greenberg, for a venture to establish and operate a restaurant in the Borough of Monroeville, Allegheny County, Pa. The recovery of the money is sought on the grounds of misrepresentation and fraudulent use of the money by defendants. Defendants are Jack J. Greenberg, Lois Greenberg, his wife, J. Greenberg, Inc., and Essen & Fressen, Inc.

On July 12, 1961, plaintiff and defendant, Jack J. Greenberg, executed an agreement that read as follows:

"I herewith acknowledge receipt of the amount of FIFTEEN THOUSAND and 00/100........Dollars, for which, and other valuable considerations, I, JACK J. GREENBERG, do herewith convey to BURTON B. SPIEGEL a five per centum (5%) interest in an enterprise to be known as the ESSEN & FRESSEN RESTAURANT, to be built and operated in Monroeville, Pennsylvania at the southeast corner of the Intersection of Mosside Boulevard and Northern Pike, by J. GREENBERG, Inc.

JACK GREENBERG (LS)
Pres. J. GREENBERG, INC.
/s/ Jack J. Greenberg
/s/ J. Greenberg"

On July 12, 1961, the $15,000 advanced by plaintiff was deposited by defendant, Jack J. Greenberg, in an account in the East Pittsburgh office of the Mellon Na-

tional Bank and Trust Co. under the name of Essen & Fressen, Inc. Between the date of deposit and August 7, 1961, approximately the same period, the brokerage accounts of Jack Greenberg, and Jack J. and Lois Greenberg, showed credits in excess of $17,000. In a number of instances the exact amount withdrawn from the Essen & Fressen account was credited to the Greenberg brokerage accounts.

Subsequently, in March 1962, plaintiff attended a preincorporation meeting of Essen & Fressen, Inc. At the meeting it was disclosed that the Essen & Fressen Restaurant would be incorporated with approximately $11,000, or $4,000 less than plaintiff advanced for this purpose. At the meeting, plaintiff was offered 270 shares of Essen & Fressen stock at $10 per share, amounting to $2,700 worth of stock, or $12,300 less than plaintiff had advanced for the purpose of establishing the Essen & Fressen business. Essen & Fressen was incorporated in April 1962, and on April 2, 1963, plaintiff was issued 270 shares of Essen & Fressen stock.

Plaintiff now brings this action in equity to recover the $15,000 because it was fraudulently used to his detriment and prevented him from fully benefiting from his investment. After hearing before the chancellor, we find the facts to be as follows:

## FINDINGS OF FACT

1. Plaintiff, Burton B. Spiegel, is a resident of Allegheny County.

2. Defendant Jack J. Greenberg and Lois Greenberg are residents of Allegheny County.

3. Defendant J. Greenberg, Inc., is a corporation engaged in leasing, management and construction of commercial property and was and is the owner of rental property in Monroeville, Allegheny County.

4. Defendant, Essen & Fressen, Inc., is a corpora-

tion formed in April 1962 for the purpose of operating a restaurant in Monroeville, Allegheny County, Pa.

5. On July 12, 1961, Burton B. Spiegel transferred to Jack J. Greenberg the sum of $15,000 in return for a five percent interest in a restaurant to be known as Essen & Fressen, Inc.

6. Between July 12, 1961, and August 7, 1961, the $15,000 transferred by Burton B. Spiegel to Jack J. Greenberg was withdrawn from the Essen & Fressen account and deposited to brokerage accounts in the name of Jack Greenberg and Jack J. and Lois J. Greenberg.

7. On July 12, 1961, the Essen & Fressen enterprise had cash assets of $1,608.85.

8. Essen & Fressen was incorporated in April 1962, with a stated capital of $11,000, of which $3,500 was paid in capital.

9. At a preincorporation meeting in March 1962, Burton B. Spiegel, plaintiff, was allotted 270 shares of the Essen & Fressen enterprise.

10. Burton B. Spiegel accepted delivery of 270 paid-up shares of Essen & Fressen, Inc., on April 2, 1963.

11. At the preincorporation meeting in March 1962, Burton B. Spiegel was unaware that Jack J. Greenberg had misapplied the $15,000 to his own use.

12. No part of the $15,000 transferred by Spiegel to Greenberg was used for the benefit of J. Greenberg, Inc.

13. The promotion of a restaurant enterprise was not in the ordinary course of business of J. Greenberg, Inc.

## DISCUSSION

Basic to the determination in this case is the relationship plaintiff Spiegel bore to defendant Jack J. Greenberg and to the other co-venturers in the Essen & Fressen enterprise. This relationship was well de-

scribed by Benjamin Cardozo in Meinhard v. Salmon, 249 N. Y. 458 (1928):

"Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place".

Co-venturers occupy a fiduciary relationship to each other. As to matters within the venture, if one enters into a transaction with another and fails to make a full disclosure, or if the transaction is unfair to the other, it can be set aside: Restatement, Trusts, §2(b). In like manner, a co-venturer is under a duty to use funds entrusted to him only for the proper purpose of the enterprise.

### The Agreement of July 12, 1961

The transaction of July 12, 1961 was an investment by plaintiff in the projected venture. Plaintiff has advanced the argument that the parties intended a loan to Jack J. Greenberg or to J. Greenberg, Inc., of money payable at 6% out of a 5% percent share of the profits of Essen & Fressen. The written agreement clearly imports a sale of an interest in the venture and on this point is not ambiguous. The transaction has none of the incidents of a loan agreement and the testimony discloses an intent on the part of Spiegel to enter into a commercial venture and to share in what he undoubtedly expected would be ample profits. This court finds as a fact that the agreement of July 12, 1961 was not a loan, but an investment in a commercial venture.

By the agreement of July 12, 1961, plaintiff and defendant Jack J. Greenberg became co-venturers and entered into a fiduciary relationship. As a fiduciary Jack Greenberg had the affirmative duty to disclose the

worth of the venture. His failure to do so, when it must have been apparent to him that plaintiff considered the venture to have great value (at the percentage agreed upon the venture would have appeared to have a value of $300,000; in fact Spiegel's funds constituted almost the entire value) was a breach of an affirmative duty. This breach of fiduciary duty, as well as the shocking unfairness of the agreement, gives rise to a right in equity for the plaintiff to set aside the agreement and recover the money paid.

### Misuse of Funds Entrusted

On July 12, 1961, Jack Greenberg received $15,000 from plaintiff. The money was deposited the same day in a bank account under the name Essen & Fressen Restaurant. By August 7, 1961 the $15,000 had been withdrawn. During approximately the same period of time Jack J. Greenberg deposited over $15,000 in two brokerage accounts, one in his name and one in the joint names of Jack J. Greenberg and his wife, Lois Greenberg. In a number of instances, the amount of withdrawals correspond exactly to the amounts of the deposits in the brokerage accounts, identical in some cases even to the cents. This court finds as a fact that the money entrusted to Jack J. Greenberg was used by him for his own personal stock speculation.

### The Agreement in March 1962

It is evident that Jack J. Greenberg's dual breach of fiduciary duty gave rise to a right in plaintiff of the recovery of $15,000. It is contended, however, that when plaintiff accepted 270 shares of Essen & Fressen stock at a par value of $10 per share, he forfeited any additional rights against Jack J. Greenberg personally. It is contended further that this constitutes a novation.

Initially, it must be noted that even if a novation did in fact occur, the new contract would have to be set aside by a court in equity. Plaintiff and defendant Jack

J. Greenberg, as well as the other co-venturers, were in a fiduciary relationship, and an agreement made without full disclosure, or an agreement that is shockingly unfair, is voidable by the injured party. Although the testimony of what occurred at that meeting is conflicting, it is certain that plaintiff did not then know that Greenberg had used plaintiff's funds for stock speculation. Consequently, he was not aware of the extent of his rights against Greenberg and an agreement made in the absence of this essential disclosure would be voidable. Moreover the agreement argued for by defendant Greenberg would be shockingly unfair. The new corporation was to be capitalized at $11,000. Only $3,500 had been in fact paid in. Defendants, in effect, ask this court to find that plaintiff agreed to pay $15,000 for stock having at a most generous view a value of $2,700.

Finally, this court does not find a novation between Spiegel and Jack Greenberg. In March 1962, plaintiff had two sources of redress: (1) a clear right for breach of trust against Jack Greenberg personally and (2) a possible right in the assets possessed by the venture. At that time it appeared that the co-venturers were told by Greenberg that the money had been used for the purposes of the venture. This latter claim was one that might properly by adjusted by the co-venturers. In effect, the co-venturers agreed that Spiegel's claim in the enterprise would be limited to slightly less that one quarter, and that they would look to Jack Greenberg for the subscription price. The result was a pre-incorporation subscription by Spiegel for 270 shares to be paid for by Jack Greenberg out of the $15,000.

Whether plaintiff also waived his right to recover from Jack J. Greenberg for the breach of fiduciary duty is a mixed question of law and fact and in each case depends upon its own circumstances: Zampetti

v. Cavanaugh, 406 Pa. 259 (1962). In the present case this court cannot find such a full knowledge in plaintiff of the facts or of his legal rights as to constitute consent or affirmance of the unauthorized conduct.

In addition to Jack Greenberg individually, plaintiff has joined J. Greenberg, Inc., Essen & Fressen, Inc., and Lois Greenberg.

Plaintiff's suit against J. Greenberg, Inc., is predicated upon two basic allegations: (1) That the agreement of July 12, 1961 was entered into on behalf of J. Greenberg, Inc., and (2) that the $15,000 was for the purpose of sewer construction, the benefit of which has accrued to J. Greenberg, Inc.

It is possible for a corporation to be the promoter of a new corporation: Kardo Co. v. Adams, 231 Fed. 950 (1916), and where it functions as such it may be responsible for the fraud of its agents. Whether J. Greenberg, Inc., is chargeable with the wrongdoing of Jack J. Greenberg will depend upon the capacity in which the parties were acting and upon the authority of the agent.

The written agreement of July 12, 1961, is ambiguous. It was hurriedly typed by plaintiff. In the body of the typewritten portion it is stated "I, Jack Greenberg" convey an interest in the enterprise to "be built and operated" by "J. Greenberg, Inc.". The typewritten signature reads:

Jack J. Greenberg (LS)
Pres., J. Greenberg, Inc.",

and it is signed in ink:

"Jack J. Greenberg
J. Greenberg".

Where a writing is ambiguous on its face a court may look beyond the writing to determine whether the use of the corporate designation was merely descriptive of the parties or whether it was intended to characterize the capacity they dealt in: Restatement, Agency

§146. Plaintiff has testified that he first met Jack J. Greenberg when he wandered into Greenberg's drug store and that a friendship developed between them. The various meetings prior to July 12, 1961, were in the drug store, at a restaurant and in Mr. Greenberg's home. At no time does it appear that plaintiff believed he was dealing with a corporation; rather, the testimony leads to the contrary, that Spiegel was impressed by Greenberg, or out of friendship, or both, entered into a new venture, the restaurant. Consequently, this court finds that Jack J. Greenberg contracted for himself and not for J. Greenberg, Inc., Nor does this court find that any of plaintiff's funds went into the sewer construction. Therefore, the suit against J. Greenberg, Inc., will be dismissed.

The actions against Essen & Fressen, Inc., and against Lois Greenberg must also be dismissed. Plaintiff has not been harmed by any action of Essen & Fressen, Inc. Plaintiff is a shareholder in Essen & Fressen and such rights as he may have are derivative. Nor is there any evidence that Lois Greenberg participated in the fraud, contracted with plaintiff, or has the benefit of any of plaintiff's funds. The suit against Lois Greenberg will be dismissed.

As this court has found that J. Greenberg, Inc., did not contract with plaintiff in relation to the agreement of July 12, 1961, the second count of plaintiff's complaint is not sustainable. Further, the transfer of stock in Essen & Fressen, Inc., was an initial issue of stock and not within the purview of the Pennsylvania Securities Act.

### Conclusions of Law

1. Equity has jurisdiction over the parties and the subject matter.

2. By the agreement of July 12, 1961, Burton B. Spiegel and Jack J. Greenberg became co-venturers in the Essen & Fressen enterprise.

3. The agreement of July 12, 1961, was made by Jack J. Greenberg on his own behalf and not for J. Greenberg, Inc.

4. Jack J. Greenberg did not have actual or apparent authority to bind J. Greenberg, Inc., to the agreement of July 12, 1961.

5. Jack J. Greenberg and Burton B. Spiegel occupied a fiduciary relationship as co-venturers in the Essen & Fressen enterprise.

6. Jack J. Greenberg's failure to disclose the true value of the Essen & Fressen enterprise was a breach of fiduciary duty and the agreement of July 12, 1961 is voidable by plaintiff.

7. Jack J. Greenberg's misuse of the $15,000 was a breach of fiduciary duty and plaintiff may recover the $15,000.

8. Plaintiff did not waive his personal right to recover from Jack J. Greenberg by agreeing to accept the 270 shares of Essen & Fressen stock.

9. The agreement of March, 1962, was a preincorporation subscription by plaintiff for 270 shares of Essen & Fressen, Inc., stock and an agreement by the co-venturers to look to Jack J. Greenberg for the value of the subscription.

10. Plaintiff's acceptance of 270 paid shares in Essen & Fressen was restitution of $2,700 of the $15,000.

11. Plaintiff may have judgment against Jack J. Greenberg for $12,300.

12. There is no evidence that Lois Greenberg entered into any agreement with plaintiff, participated in the fraud, or enjoys the benefit of plaintiff's funds, and the suit against Lois Greenberg must be dismissed.

13. Defendant J. Greenberg, Inc., did not contract with plaintiff nor has it received the benefit of plaintiff's money. The suit against J. Greenberg, Inc., must be dismissed.

14. Plaintiff does not have a direct right against

Essen & Fressen, Inc., and the suit against Essen & Fressen must be dismissed.

15. The evidence does not disclose any violation of the Pennsylvania Securities Act.

### DECREE NISI

Now, to wit, March 18, 1965, it is ordered, adjudged and decreed that judgment be and it hereby is entered in favor of Burton B. Spiegel, plaintiff against defendant Jack J. Greenberg in the sum of $12,300, with interest on the amount of $15,000 from July 12, 1961 to March, 1962; and with interest on the sum of $12,300 from March, 1962.

The complaint is dismissed as to Lois Greenberg; J. Greenberg, Inc.; and Essen & Fressen, Inc.

Costs of this suit to be paid by defendant, Jack J. Greenberg.